[No. 2314.  Decided February 6, 1897.]

THE STATE OF WASHINGTON, *Respondent*, v. GIN PON,
*Appellant.*

JURY — HOW SWORN — CHINESE WITNESSES — OATH — HOMICIDE — PRE-
MEDITATED MALICE — INSTRUCTIONS.

Although Laws 1891, p. 59, § 68, provides that the jury in a crim-
inal case shall be sworn well and truly to try the issue between the
state and the prisoner at the bar "according to the evidence," yet
an oath in the following form, "You and each of you do solemnly
swear that you will well and truly try [the prisoner named] and
true deliverance make between the state and the prisoner at the
bar," is not ground for reversal, when they have been charged by
the court that their verdict was to be rendered upon the evidence
produced in the case.

Where an oath has been administered to a Chinese witness ac-
cording to the custom and religion of his country, the subsequent
administration to him of an oath in the form prescribed by our stat-
ute is not prejudicial error.

In instructing the jury upon premeditated malice in connection
with the crime of murder in the first degree, it is not erroneous to
charge "that malice as used in the definition of murder in the first
degree is qualified by the words 'deliberate' and 'premeditated,'
and as thus qualified it means a fixed design to unlawfully take hu-
man life, accompanied with some degree of reflection thereon, and
the act of killing which follows; the premeditation and reflection
thereon may take place but a moment before the doing of the act,
but both states of mind must have actual existence to make the
offense murder in the first degree." (*State v. Rutten*, 13 Wash. 203,
distinguished).

Appeal from Superior Court, Spokane County. —
Hon. JESSE ARTHUR, Judge.  Affirmed.

*James E. Fenton, W. W. Saunders,* and *Alex. M. Win-
ston,* for appellant.

*J. W. Feighan,* Prosecuting Attorney, for The State.

The opinion of the court was delivered by

DUNBAR, J.—The appellant was convicted, by the

superior court of Spokane county, of the crime of murder in the first degree and the judgment of death was pronounced, from which judgment this appeal is taken.

The evidence is not brought here on the appeal, and the appellant relies on three alleged errors, viz : (1) That the oath administered to the jury differed substantially from the form fixed by statute; (2) that the court, over the objections of the appellant, permitted the Chinese witnesses to be re-sworn in the ordinary manner after they had taken the oath which according to their religion they believed to be most binding upon their consciences; (3) that the instructions of the court were erroneous.

The oath administered to the jury was as follows: " You and each of you do solemnly swear that you " will well and truly try Gin Pon and true deliverance " make between the state and the prisoner at the bar. " So help you God." Section 68, page 59 of the laws of 1891, provides that the jury shall be sworn or affirmed well and truly to try the issue between the state and the prisoner at the bar, whom they shall have in charge, according to the evidence. It is the contention of the appellant that there is a material and substantial difference between the form of oath prescribed by the statute and the oath administered to the jury in the trial of this cause, and several cases are cited to sustain this contention. The cases cited, however are mostly old cases, and the decisions were rendered by courts who had not so liberally construed the criminal statutes of their respective states as has the court of this state. And, in addition, they were cases where either an exception was taken to the form of the oath at the time it was administered, or where the discrepancy had been called to the attention of the trial court

on motion for a new trial. In the case at bar the first objection to the form of the oath is raised in this court. No exception was taken to it at the time, nor was it called to the attention of the lower court on a motion for a new trial, or in any other way. The motion for a new trial was based upon two grounds : (1) Error of law occurring at the trial and excepted to at the time by the defendant; (2) that the verdict rendered herein is contrary to the law and to the evidence. This motion was submitted without oral argument; so that it would have been impossible for the court from said motion to have had its attention directed to the alleged error in the administration of the oath.

We are aware of the rule governing the rights of persons charged with felonies, but we do not think that there was such a substantial variance from the form of the oath prescribed by the statute that the appellant was in any way injured by the omission complained of. It is true that the oath prescribed is to the effect that they shall try and true deliverance make between the state and the prisoner at the bar according to the evidence. But the jury could not but understand that their verdict was to be rendered upon the evidence produced in the case. There is no other method of trial prescribed by the law, and the same law which prescribes the form of the oath makes it the duty of the court to instruct the jury upon their duty in relation to the testimony, and the duty of the jury to obey such instructions, and it affirmatively appears in this case that the jury were so instructed. The court, among other things, instructed the jury as follows :

" Under the plea of not guilty the defendant is entitled to take advantage of every defense known to the law. Before you can find him guilty of any crime

whatsoever in this information, every essential allega-
tion constituting such crime must be proven by the
state to your reasonable satisfaction and beyond a
reasonable doubt.  The law presumes the defendant
innocent of all crime until he is proven guilty by the
evidence in the case to your satisfaction beyond a
reasonable doubt,"

and much more to the same effect.  So that, consider-
ing the oath administered in connection with the in-
struction of the court, which the jury were bound to
obey, the irregularity complained of ought not to con-
stitute reversible error.

The state filed a motion to be permitted to amend
the statement of facts to show that the oath prescribed
by the statute was actually administered, and that the
omission alleged as error was simply an inadvertent
omission in the preparation of the statement of facts;
and affidavits were offered in support of this motion.
This court did not see its way clear to allow an amend-
ment to the statement of facts, but we mention this to
accentuate the importance of not permitting a defend-
ant, even though charged with a felony, to quietly sub-
mit to an irregularity of this kind until after the trial
court had lost jurisdiction of the case and the power
to correct its records to show the actual facts, and
thereby work a reversal of the judgment.  Such a hold-
ing we think would not be in the interest of substan-
tial justice, but its only effect would be to cause the
miscarriage of justice.

On the second proposition, it seems that the oath
which was administered to the witnesses, who were
Chinese, was administered according to the custom
and religion of their country, viz., each witness blew
out a candle, and his oath was that if he did not tell
the truth he would be snuffed out as was the candle.

But after this eastern form of oath was administered, the court also administered the form of oath prescribed by our statute, and the appellant insists that the taking of this second oath in some way weakened the influence of the other oath in the minds of the witnesses. We think this contention scarcely merits a discussion.

The last error complained of is as to the instructions of the court. After defining murder in the first degree, the court said:

"You will observe, however, that malice as used in the definition of murder in the first degree, which I have just read to you, is qualified by the words 'deliberate' and 'premeditated,' and as thus qualified it means a fixed design to unlawfully take human life, accompanied with some degree of reflection thereon, and the act of killing which follows; the premeditation and reflection thereon may take place but a moment before the doing of the act, but both states of mind must have actual existence to make the offense murder in the first degree."

It is insisted that this instruction is opposed to the announcement made by this court in the case of *State v. Rutten,* 13 Wash. 203 (43 Pac. 30). We think the instruction given in this case and the one criticized in *State v. Rutten, supra,* are easily distinguishable. In that case the instruction was as follows:

"Premeditated malice is where the intention to unlawfully take life is deliberately formed in the mind, and that determination meditated upon before the fatal stroke is given. There need not be any appreciable space of time between the formation of intention to kill and killing. They may be as instantaneous as successive thoughts. It is only necessary that the act of killing be preceded by the concurrence of will, deliberation and premeditation on the part of the slayer."

And the court reiterated the statement that in deliberating there need be no appreciable space of time between the intention to kill and the act of killing; but that they might be as instantaneous as the successive thoughts of the mind; and it was thought by this court that such an instruction did away with the distinction made by the statute between murder in the first and second degrees.

But the instruction in the case at bar provides for an appreciable space of time, viz., a moment, and this is a moment of time before the doing of the act. It is true that a moment is the smallest division of an appreciable space of time, but it is a division, and an appreciable one, and this qualification removed the instruction from the objections commented upon in the case above referred to.

The judgment is affirmed.

SCOTT, C. J., and GORDON and REAVIS JJ., concur.

ANDERS, J., not sitting.