[No. 33044. *En Banc.* October 20, 1955.]

THE STATE OF WASHINGTON, *Respondent*, v. MARKO BIONDIC, *Appellant.*[1]

[1]Reported in 288 P. (2d) 845.

*Thomas P. Keefe,* for appellant.

*Charles O. Carroll, Frank Harrington,* and *Murray B. Guterson,* for respondent.

HILL, J.—Marko Biondic was found guilty of murder in the first degree, and, by a special verdict, it was also found that the death penalty should be inflicted. From the judgment and sentence entered. upon the verdict of the jury, this appeal is taken.

Three assignments of error dealing with instructions given or refused will be considered first.

Instructions on justifiable homicide and self-defense

were refused. There being no evidence from which the jury could have found that the killing, which was admitted, was either excusable or justifiable homicide as those terms are defined in our statutes (Laws of 1909, chapter 249, §§ 152, 154, pp. 933, 934 (Rem. Rev. Stat., §§ 2404, 2406 [*cf.* RCW 9.48.150, 9.48.170])), the trial court properly refused to give the requested instructions, and just as properly gave an instruction that, as a matter of law, the killing was neither justifiable nor excusable. *State v. Hartley* (1946), 25 Wn. (2d) 211, 226, 170 P. (2d) 333.

 While the trial court did instruct on second-degree murder, the error, if any, in refusing to instruct that, if an offense had been proved against the appellant "and there exists a reasonable doubt as to which of two or more degrees he is guilty, then he shall be convicted only of the lowest," was not prejudicial, because the trial court should not have submitted the theory of second-degree murder to the jury. As stated in *State v. Much* (1930), 156 Wash. 403, 410, 287 Pac. 57, "It was either murder in the first degree, or nothing." The evidence was such that premeditation was conclusively established by the appellant's own testimony. A case squarely in point is *Goodall v. United States* (1950), 180 F. (2d) 397, 401 (C. C. A., D. C.). See, also, *State v. Pepoon* (1911), 62 Wash. 635, 640, 114 Pac. 449; *State v. Mahoney* (1922), 120 Wash. 633, 642, 208 Pac. 37; *State v. Much, supra; State v. Anderson* (1941), 10 Wn. (2d) 167, 175, 116 P. (2d) 346.

Appellant urges that instruction No. 14, which included a statement that "The fact that punishment may follow a conviction may be considered by you only in so far as it may tend to make you careful," was erroneous because § 1 of chapter 112, Laws of 1919, p. 273 (Rem. Rev. Stat., § 2392 [*cf.* RCW 9.48.030]) requires a jury (where a defendant is found guilty of first-degree murder) to find a special verdict as to whether the death penalty shall be imposed.

 Immediately following the quoted words from instruction No. 14, we find the following: "The question of guilt or innocence is a question of fact—not a question of

sympathy or prejudice or what the punishment may be." The instruction complained of is a proper instruction on the issue of guilt or innocence and could not possibly have confused the jury as to its function, which was, first, to determine guilt or innocence, without regard, except as stated in the instruction, to what the punishment might be; and, second, if the defendant was found guilty of murder in the first degree, to (as stated in instruction No. 15) "also return a special verdict in answer to the following question: Shall the death penalty be inflicted?"

Error is also assigned to the trial court's refusal to grant a motion made by appellant's counsel just after the defense had rested, "to amend the plea of the defendant [appellant] to include the defense of not guilty by reason of mental irresponsibility, which condition still exists." The excuse for not having entered such a plea earlier in the proceedings was:

". . . after hearing the testimony of the defendant I feel that it is quite apparent that such a plea would be a proper plea under the circumstances. And this is the time that I discover it; I didn't discover it until I heard the testimony."

Our statute governing pleas of insanity or mental irresponsibility (Laws of 1907, chapter 30, § 2, p. 33 (Rem. Rev. Stat., § 2174 [cf. RCW 10.76.020])) provides that such a plea shall be in writing and filed at the time of pleading to the information or indictment; but it provides further that such a plea

". . . may be interposed at any time thereafter, before the submission of the cause to the jury, *if it be proven that the insanity or mental irresponsibility of the defendant at the time of the crime was not before known to any person authorized to interpose a plea.*" (Italics ours.)

The trial court was convinced that there was nothing in appellant's conduct or testimony to suggest mental irresponsibility. After so stating, the judge said:

"True, he doesn't speak clearly and he doesn't understand some of the questions which were asked of him, but in most respects his testimony was clear and lucid and dem-

onstrated to me that he knew what he was talking about and understood the situation.

"I don't put the same interpretation upon his inability to answer the difference between the crime of murder in the first degree and murder in the second degree. There we are talking about a technical matter of law that a lay person is not expected to understand or be able to answer necessarily."

The trial court was further convinced that nothing was added by the appellant's testimony and conduct on the witness stand to the knowledge already possessed by his counsel as to appellant's mental condition. Such being the case, the showing made by appellant's counsel did not meet the requirements for a delayed plea of mental irresponsibility. See *State v. McLain* (1939), 199 Wash. 664, 666, 92 P. (2d) 875. (Neither *State v. Wilson* (1912), 69 Wash. 235, 124 Pac. 1125, nor *State v. Fitzgibbon* (1949), 32 Wn. (2d) 881, 203 P. (2d) 1016, governs the present situation, although, as was said in the *Wilson* case (p. 238), "we do not want to be understood as holding that his present mental condition cannot be inquired into.")

A request for a sanity hearing was made after the defense had rested and at the same time as the motion to be permitted to interpose a plea of mental irresponsibility, which we have just discussed. There being no issue before the jury as to insanity or mental irresponsibility at the time of the crime, the only reason for the appointment of a commission to determine appellant's sanity would relate to his condition at the time of trial. There was nothing before the court to raise any question as to appellant's sanity at that time except his testimony and conduct on the witness stand, and we have heretofore quoted the trial court's statement as to that. The trial court had had the appellant under observation for four days and had just listened to his testimony for several hours, and was convinced that appellant was sane. The appointment of such a commission while a trial is in progress is discretionary, and there is here no suspicion of an abuse of discretion. *State v. Peterson* (1916), 90 Wash.

479, 482, 156 Pac. 542; *State v. Henke* (1938), 196 Wash. 185, 192, 82 P. (2d) 544.

Appellant contends that the jury was not properly sworn. Laws of 1854, 1st Ses., An Act to Regulate the Practice and Pleadings in Prosecutions for Crimes, § 107, p. 119 (Rem. Rev. Stat., § 2143 [*cf.* RCW 10.49.100]), prescribes in the following language the oath to be administered to the jury:

"The jury shall be sworn, or affirmed, to well and truly try the issue between the territory [now state] and the defendant, according to the evidence; and in capital cases, *to well and truly try, and true deliverance make, between the territory and the prisoner at the bar, whom they shall have in charge, according to the evidence.*" (Italics ours.)

The jury, when selected and ready to try the cause, was sworn to

" . . . well and truly try the issue joined between the State of Washington and Marko Biondic alias Marc Biondic, defendant, and *a true verdict render* according to the law and the evidence as given at the trial." (Italics ours.)

After taking testimony for the entire day, the trial court learned that the oath as prescribed by statute in capital cases had not been used, and caused the jury to be sworn again in the manner prescribed. Appellant made a timely motion for a mistrial.

Just why, in capital cases and not in other criminal cases, the jury should take an oath to "true deliverance make, between the territory [now state] and the prisoner at the bar, whom they shall have in charge," is not clear. To quote an early decision: "The Legislature presumably had some sound reason in prescribing one form of oath for capital, and another for all other cases" (*Leonard v. Territory of Washington* (1885), 2 Wash. Terr. 381, 395, 7 Pac. 872) when the statute which we have quoted was adopted back in 1854, but what that reason was no member of this court now knows.

█ We have heretofore indicated that the omission of the words, "whom they shall have in charge," from the oath given to the jury in a capital case is not a substantial variance from the form prescribed by the statute, and that

its omission is not ground for reversal. *State v. Gin Pon* (1897), 16 Wash. 425, 47 Pac. 961; *State v. Tommy* (1898), 19 Wash. 270, 53 Pac. 157. We now hold that the words, "and a true verdict render," which were incorporated in the oath given to the jury when it was first sworn to try the case, is the equivalent of the "true deliverance make" called for by the statute in capital cases. See Black's Law Dictionary (4th ed.) 515, where "deliverance" is defined; "In practice. The verdict rendered by a jury"; and 26 C. J. S. 696: "Deliverance. . . . Technically, in practice, the verdict rendered by a jury." This holding makes it unnecessary to pass upon the effect of reswearing the jury.

All the assignments of error having been considered and no error having been found, the judgment is affirmed.

ALL CONCUR.

