[Nos. 39739, 39741. Department One. March 28, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT H. PALMER, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. FLOYD RAY PHILLIPS, *Appellant*.*

*Reported in 438 P.2d 876.

---

[1]Quoted and followed in *Silverton v. Silverton*, 71 Wn.2d 276, 277, 427 P.2d 1001 (1967).

Consolidated prosecutions for robbery. Defendants appeal from convictions and sentences.

*Ralph Llewellyn Jones,* for appellant Palmer (appointed counsel for appeal).

*Phelps R. Gose,* for appellant Phillips (appointed counsel for appeal).

*Arthur R. Eggers* and *Albert J. Golden,* for respondent.

EVANS, J.†—The defendants, Palmer and Phillips, were separately charged by information with the crime of armed robbery. Palmer was charged with robbery while acting in concert with Floyd Ray Phillips, and Phillips was charged with robbery while acting in concert with Robert H. Palmer. The two cases were consolidated for trial, and each

---

†Judge Evans is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

defendant appeals from judgment and sentence based upon a verdict of the jury finding him guilty as charged.

There was ample evidence to support the verdict of guilty as to each defendant. Neither defendant challenges the sufficiency of that evidence.

Both defendants assign as error the court's denial of their motions to suppress evidence.

January 9, 1967, at approximately 3:15 p.m., the manager of Safeway store No. 225, located in Walla Walla, Washington, was robbed of approximately $547 in United States currency. The police were immediately notified, and investigating officers arrived at the scene within a few minutes, where they interviewed the victim and other eyewitnesses. As a result of information they received at the scene, the officers relayed to other law enforcement agencies within the area the information that the automobile used in the robbery was a 1965 Ford, brown, with a dirty white top, which had clothes hanging in the back. The possible license number prefix was "A" or "R." Two men were involved in the robbery. One of them was described as having black hair, wearing a red sweater and dark trousers, and the other was described as "being in his 20's."

The report of this robbery and the above description were received by Walla Walla County Deputy Sheriff James Shannon, who immediately drove to the approach to the Snake River bridge which connects Walla Walla County and Franklin County. Approximately 45 minutes after receiving the description of the suspects and car, Deputy Sheriff Shannon observed the approach of a 1965 Ford, two-door, brown, with a cream-colored top, with clothes hanging in the back. It had Arizona license plates. There were two men in the car, one, a man approximately 23 years of age, and the other, wearing a red jacket. Deputy Sheriff Shannon immediately called for assistance from the Franklin County Sheriff's Office. Two Franklin County officers were in the area and came to his assistance. The 1965 Ford was stopped. The defendant Palmer, who was driving, and defendant Phillips, who was also in the front seat, were ordered from the automobile and searched. At

this time, Deputy Sheriff Shannon observed a dollar bill on the floor in the rear of the automobile in front of the back seat. A search of the automobile was begun. The hood of the car was lifted and, between the battery and the fender, a .45 caliber automatic pistol and a brown paper sack containing currency were discovered.

The motion to suppress the gun, the sack of currency, and the dollar bill is without merit. Clearly, the officers had probable cause for making the arrest. *State v. Bellows,* 72 Wn.2d 264, 432 P.2d 654 (1967). It is equally clear that these items were seized as an incident to that lawful arrest. *State v. Green,* 70 Wn.2d 955, 959, 425 P.2d 913 (1967).

Before the search of the car had been completed and because of a traffic hazard which was being created by curious motorists at the scene of the arrest, the 1965 Ford was moved to the Franklin County Sheriff's Office, 2½ miles from the scene of the arrest. The trip took approximately 5 minutes. At the sheriff's office, the trunk of the automobile was immediately opened, where clothing was found which fit the description of that worn by the robber. In the clothing was found a note, which at the trial was offered as the same note which was handed to the manager of the Safeway store by the robber.

In support of their motion to suppress the clothing and the note found in the trunk, defendants rely upon *Preston v. United States,* 376 U.S. 364, 11 L. Ed. 2d 777, 84 Sup. Ct. 881 (1964). However, a careful analysis of *Preston,* in the light of *Cooper v. California,* 386 U.S. 58, 17 L. Ed. 2d 730, 87 Sup. Ct. 788 (1967), clearly indicates that *Preston* does not apply to the present factual situation.

In *Cooper v. California, supra,* the court, in discussing and distinguishing the *Preston* case, states, at 61:

> Preston was arrested for vagrancy. An arresting officer took his car to the station rather than just leaving it on the street. It was not suggested that this was done other than for Preston's convenience or that the police had any right to impound the car and keep it from Preston or whomever he might send for it. The fact that the police had custody of Preston's car was totally unrelated to the

vagrancy charge for which they arrested him. So was their subsequent search of the car.

The court then continues:

> This case is neither *Preston* nor controlled by it. Here the officers seized petitioner's car because they were required to do so by state law. They seized it because of the crime for which they arrested petitioner. They seized it to impound it and they had to keep it until forfeiture proceedings were concluded. Their subsequent search of the car —whether the State had "legal title" to it or not—was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained. The forfeiture of petitioner's car did not take place until over four months after it was lawfully seized. It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it. It is no answer to say that the police could have obtained a search warrant, for "[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." *United States v. Rabinowitz*, 339 U.S. 56, 66. Under the circumstances of this case, we cannot hold unreasonable under the Fourth Amendment the examination or search of a car validly held by officers for use as evidence in a forfeiture proceeding.

In *Cooper*, the officers were required by state law to seize the car. In the present case the officers had a right to seize the car as an incident to a lawful arrest. In *Cooper*, the officers were required to retain the car in their custody until forfeiture proceedings were concluded and they had a right to search it while in their custody. In the present case, the officers had a right to retain the car in their custody as evidence until the robbery proceedings were concluded. They also had a right to search it while in their custody. We hold that any evidence discovered in that search could properly be used in proof of the crime for which they were arrested. Whether *Preston* would prevent its use as evidence in support of a criminal charge other than the one for which the defendants were arrested is not before this court.

We find no error in the refusal of the court to grant defendants' motions to suppress evidence obtained in the search of the car trunk.

Both defendants sought a change of venue, alleging that adverse newspaper publicity prevented them from having a fair trial. The day following the robbery, under the heading "Suspects Caught," two articles appeared on the front page of the Walla Walla Bulletin. These articles contained a recital of the circumstances of the robbery from the viewpoint of the victims and eyewitnesses, and a recital of some of the circumstances of the arrest of "two suspects," who were identified as "Robert H. Palmer, 38 and Floyd R. Phillips, 19, both of Phoenix, Ariz." The portion of the articles to which defendants object is as follows:

> The sheriff's office reported Tuesday that Shannon and the two Franklin County officers found the .45 pistol used in the robbery underneath the hood of the car in which the men were riding. Also found was a quantity of cash, the report said.
>
> City police report that one of the men was identified in a lineup Monday evening and that the note demanding the money was on his person when he was arrested.

The two newspaper articles appeared January 10, 1967. The trial commenced approximately 10 weeks later, March 20, 1967.

In the voir dire examination of the jurors, 9 of the 12 jurors were asked about the newspaper articles, and the remaining 3 were asked if they could sit as fair and impartial jurors. Each juror stated either that the articles were not read by him or that they were read but would have no bearing on his deliberation.

Defendant Palmer sought a change of venue on the additional claim that many citizens of Walla Walla County were prejudiced against him because of his bad reputation in the community. Defendant Phillips sought a separate trial on the same ground, namely that if he was required to be tried jointly with Palmer, he, Phillips, would be prejudiced by Palmer's bad reputation.

To support these contentions, a former employer, and two sisters and a brother of Palmer testified that they knew of Palmer's bad reputation in the community. Because of that reputation and the newspaper reports of Palmer's arrest, three of them expressed the opinion, and one of them assumed, that Palmer could not receive a fair trial in Walla Walla County. Their testimony, however, disclosed that Palmer had been in the community only once for a visit 4 years previously, and had not lived in the community for 8 years before that visit. While the witnesses were understandably aware of Palmer's past conduct, their fears that the whole community was equally informed and, therefore, prejudiced against Palmer, were not borne out in the voir dire examination of the jurors.

Neither defendant points to anything that transpired in the examination of prospective jurors, or at any other time, which indicates that any juror was prejudiced by reason of anything that he had either read or heard.

Defendant Palmer sought a separate trial upon the additional claim that Phillips' plea of mental irresponsibility was antagonistic to Palmer's general denial of the crime. Only the bare claim is made, and defendant Palmer does not attempt to point out in what particular the two pleas are antagonistic or how Palmer was prejudiced. The mere fact that evidence may be admissible against one defendant and not against another is not in and of itself proof that two defendants cannot have a fair trial if tried together. *State v. Courville,* 63 Wn.2d 498, 387 P.2d 938 (1963). Furthermore, all that the jury knew of such a plea came from a remark by counsel for defendant Phillips, in his opening statement, to the effect that a plea of mental irresponsibility would be presented. However, by reason of rulings made by the trial court, no such plea was ever presented to the jury.

■ A change of venue in a criminal case is a matter within the sound discretion of the trial court, and its determination will not be reversed unless there is an abuse of discretion. *State v. Hawkins,* 70 Wn.2d 697, 425 P.2d 390

(1967). The rule is the same as to the question of separate trials to joint defendants. *State v. Courville, supra.*

We find no abuse of discretion of the trial court in denying the motions of either defendant for a change of venue or for a separate trial.

Defendant Phillips assigns as error the refusal of the court to appoint a psychiatrist to examine Phillips to determine whether or not he was legally sane at the time of the commission of the acts charged and at the time of trial.

This issue was presented to the trial court in the form of an affidavit of counsel for defendant Phillips as follows:

Phelps R. Gose, being first duly sworn, on oath deposes and says: That, since the time Defendant entered his plea of Not Guilty, your Affiant has had numerous conferences with the Defendant and the Defendant has informed Affiant of the following incidents in Defendant's past life:

1. Defendant's mother has been committed to a mental institution.

2. While Defendant was a teenager, he was examined by psychiatrists; the diagnosis of the psychiatrists remains unknown to your Affiant.

3. According to Defendant, his father was murdered, and, after the murder, Defendant went to the grave site of his father and proceeded to discharge a firearm over his father's grave.

4. Defendant tried to light a fire in his jail cell.

5. Defendant should be examined by a State-appointed psychiatrist to determine:

A. Whether or not he is legally sane at the present time; and

B. Whether or not he was sane at the time of the alleged commission of the acts charged in the Information.

The incidents set forth in the above affidavit were not otherwise explained, and counsel for Phillips points to no conduct of Phillips within his personal knowledge from which either he or the court could draw any conclusion as to the mental condition of Phillips.

Judge Tuttle stated that the defendant Phillips had appeared before him on at least two different occasions and

did not show any signs of being psychotic. Judge Tuttle concluded that the defendant Phillips had not presented sufficient evidence to warrant the appointment of a psychiatrist for examination purposes.

Following the trial and conviction of the defendant Phillips, and in support of his motion for a new trial, his counsel urged as additional grounds for the appointment of a psychiatrist the fact that defendant Phillips took the stand during trial, contrary to the advice of his counsel, and denied committing the robbery, and later signed an affidavit admitting the robbery and exonerating defendant Palmer. Counsel also stated that Phillips was suspected of having homosexual tendencies, and contended that these additional factors cast further doubt upon defendant's rationality and indicated that he may have been insane at the time of trial.

We agree with the trial court that these additional factors added nothing significant to the factors which were the basis of Judge Tuttle's earlier refusal to appoint a psychiatrist. On the other hand, at this stage of the proceedings, Judge Jordan, who had observed Phillips throughout several days of trial, was of the opinion that Phillips was sane.

In *State v. Peterson*, 90 Wash. 479, 482, 156 Pac. 542 (1916), the court stated:

[H]aving in mind the general rule of the common law that an accused person cannot be lawfully tried or have judgment rendered against him while he is insane, as held in *State ex rel. Mackintosh v. Superior Court*, 45 Wash. 248, 88 Pac. 207, we are of the opinion that it is a matter within the discretion of the trial court as to whether or not it will enter upon an examination of the question of the sanity of the accused with a view of determining the right of the state to put him upon trial and render judgment against him. We know of no statute of this state which makes it mandatory upon the trial court to enter upon such an inquiry or to appoint a commission looking to the determination of such a question. In states having statutes authorizing the appointment of such a commission with a view of determining the sanity of an accused person prior to trial or judgment, the statute not being mandatory in terms, the rule

seems to be that it is within the discretion of the trial court as to whether or not it will so proceed. . . .

. . . .

We cannot see that the rule of discretion should be regarded differently in the absence of a statute on the subject. . . . The real question we think then is, Did the learned trial court abuse its discretion in refusing to appoint a commission and enter upon the inquiry as asked by counsel in their motions and petition? There is nothing in the record before us showing any facts upon which the two motions made before trial were rested. The last application, made in the form of a petition, between the time of the rendering of the verdict and the time of the rendering of the final judgment, is supported only by the verification of counsel for appellant to the effect "that he believes said defendant to be insane and mentally irresponsible." It seems quite plain to us that it cannot be said, upon this showing, that the learned trial court abused its discretion in declining to appoint a commission or enter upon an inquiry touching the sanity of appellant at that time.

We agree with the trial court that the showing made as to the mental condition of Phillips was not sufficient to raise a bona fide doubt of Phillips' mental responsibility either at the time of the crime charged or at the time of trial, and hold that the trial court did not abuse its discretion in refusing to appoint a psychiatrist to examine Phillips.

Defendant Phillips assigns as error the court's dismissal of his plea of not guilty by reason of mental irresponsibility.

January 23, 1967, Phillips entered a general plea of not guilty to the offense of armed robbery. March 7, 1967, Phillips filed a special written plea in the following form:

COMES Now the Defendant, FLOYD RAY PHILLIPS, and, in addition to the plea of Not Guilty heretofore entered in this Cause, herewithin is a special plea of Not Guilty on the following ground, to-wit: That said Defendant, Floyd Ray Phillips, was insane and mentally irresponsible at the time of the commission of the acts as alleged in the Information herein.

■ Attached thereto was the affidavit of counsel for Phillips, above set forth, containing the request for appointment of a psychiatrist.

RCW 10.76.020 provides:

When it is desired to interpose the defense of insanity or mental irresponsibility on behalf of one charged with a crime, the defendant, his counsel or other person authorized by law to appear and act for him, shall at the time of pleading to the information or indictment file a plea in writing in addition to the plea or pleas required or permitted by other laws than this, setting up (1) his insanity or mental irresponsibility at the time of the commission of the crime charged, and (2) whether the insanity or mental irresponsibility still exists, or (3) whether the defendant has become sane or mentally responsible between the time of the commission of the crime and the time of the trial. The plea may be interposed at any time thereafter, before the submission of the cause to the jury, if it be proven that the insanity or mental irresponsibility of the defendant at the time of the crime was not before known to any person authorized to interpose a plea.

After the state had presented its evidence and rested, counsel for Phillips, in his opening statement, announced to the jury that he had interposed a plea of not guilty by reason of mental irresponsibility. At this point, the prosecuting attorney objected, the jury retired, and in their absence the prosecuting attorney submitted to the court that the special plea of mental irresponsibility was inadequate and should be stricken because it did not allege whether the mental irresponsibility still existed. Counsel for Phillips orally moved for permission to amend the special plea of mental irresponsibility. The motion was granted. However, when the written amended plea was filed, it appeared that counsel for Phillips still relied solely upon the allegations in the affidavit, above set forth, filed previously in support of his request for a psychiatric examination. Since no additional facts relating to the mental condition of Phillips, either at the time of the offense charged or at the time of trial, were presented, the amended plea was stricken by the court as

not meeting the statutory requirements for a delayed plea of mental irresponsibility.

We find no error in the rulings of the trial court that the original plea of not guilty by reason of mental irresponsibility and the delayed plea of mental irresponsibility be stricken as not meeting the requirements of RCW 10.76.020. *State v. Biondic*, 47 Wn.2d 593, 288 P.2d 845 (1955).

Defendant Phillips assigns as error a comment made by the court immediately after the jury had been selected. The court stated to the jury:

> In criminal cases the statute provides that in felony and capital cases the jury cannot be separated unless by consent of the defendants themselves. In this case they have not consented . . . .

A motion for mistrial was made by counsel for Phillips. The court offered to correct the instruction, but counsel did not accept this offer, and later, on the same day, both defendants consented to separation of the jury. Under these circumstances, we find that the court's misstatement of the law was not of such a nature as to constitute reversible error.

Defendant Palmer assigns as error the court's denial of his motion for a new trial based upon newly discovered evidence.

This motion is based upon an affidavit submitted by defendant Phillips following judgment and sentence. The affidavit reads as follows:

> 1. Robert H. Palmer, did not in any way plan, encourage, or participate with me in the robbery at the Rose Street, Walla Walla, Washington, Safeway store on the afternoon of January 9, 1967, and I did not tell him of my involvement in the Safeway store robbery until just before we crossed the Snake River bridge near Burbank, Washington, about sunset on January 9, 1967.
>
> 2. The money amounting to over $200.00 found on the person of Robert H. Palmer, on January 9, 1967, was not money taken from the Rose Street Safeway store in the robbery in which I was involved.
>
> /s/ Floyd R. Phillips

■ In *State v. Peele*, 67 Wn.2d 724, 732, 409 P.2d 663 (1966), we stated:

> Where, as in the instant case, the state has produced strong and convincing evidence of guilt and the defendant little or no evidence of innocence, a new trial should not be granted on the unsupported, uncorroborated testimony of an accomplice or codefendant, nor upon the offer of any new evidence unless it appears that the newly discovered evidence is of such significance and cogency that it will probably change the result of the trial.

In the present case the state produced strong and convincing evidence of guilt of defendant Palmer. An eyewitness identified him as being at the scene of the robbery, wearing clothing which matched the clothing he was wearing at the time of his arrest 45 minutes later. The automobile he was driving matched the description of the automobile observed at the scene of the robbery. Discovered in that automobile was a .45 caliber pistol, identified as identical to the gun used in the robbery; a bag containing money, identified as the bag taken in the robbery; and a note identified as the note used in the robbery. Defendant Palmer admitted that the note was in his handwriting, but testified that he had written it several years before this particular robbery. Under these circumstances, the uncorroborated statement of his accomplice Phillips cannot be held to be of such significance and cogency that it would probably change the result of the trial.

No assignment of error is made by defendant Phillips to the sentence which was imposed. However, in the interest of avoiding future litigation, if possible, we note that the sentence imposed upon Phillips is as follows:

> [A]nd it is ordered and adjudged by the Court that he, the said defendant Floyd Ray Phillips be sentenced to a maximum term of imprisonment of not *less* than twenty (20) years in such correctional facility . . . . (Italics ours.)

RCW 9.95.010 provides:

> When a person is convicted of any felony, except treason, murder in the first degree, or carnal knowledge of a child under ten years, and a new trial is not granted, the

court shall sentence such person to the penitentiary, or, if the law allows and the court sees fit to exercise such discretion, to the reformatory, and shall fix the maximum term of such person's sentence only.

The maximum term to be fixed by the court shall be the maximum provided by law for the crime of which such person was convicted, if the law provides for a maximum term. If the law does not provide a maximum term for the crime of which such person was convicted the court shall fix such maximum term, which may be for any number of years up to and including life imprisonment but in any case where the maximum term is fixed by the court it shall be fixed at not less than twenty years.

The law does not provide a maximum term for the crime of robbery. It was incumbent upon the court to fix the maximum term of defendant Phillips within the range between "not more than twenty years" and "not more than life imprisonment." To fix a "maximum" term of "not less than twenty years" fixes no maximum term within the meaning of RCW 9.95.010.

*In re McNutt v. Delmore,* 47 Wn.2d 563, 565, 288 P.2d 848 (1955), holds:

When a sentence has been imposed for which there is no authority in law, the trial court has the power and duty to correct the *erroneous* sentence, when the error is discovered.

As to defendant Phillips, the case is remanded with instructions to the trial court to correct the erroneous sentence imposed. In all other respects, the judgment is affirmed.

As to the defendant Palmer, the judgment is affirmed.

FINLEY, C. J., WEAVER, NEILL, and McGOVERN, JJ., concur.