[No. 34563-3-II.   Division Two.   May 22, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. GERALD CAYENNE, *Appellant*.

*David L. Donnan* and *Gregory C. Link* (of *Washington Appellate Project*), for appellant.

*H. Steward Menefee*, *Prosecuting Attorney*, and *Katherine L. Svoboda* and *Gerald R. Fuller*, *Deputies*, for respondent.

¶1  BRIDGEWATER, J. — Gerald Cayenne, a tribal member, appeals the trial court's imposition of a crime-related prohibition against possessing any gill nets, which the trial

court interpreted to extend throughout the Chehalis Indian Reservation, after the State convicted him of first degree unlawful use of nets to take fish. We hold that, although the trial court may impose a crime-related prohibition for activities on state land, it has had no criminal jurisdiction over the Chehalis Indian Reservation since 1989. Thus, a state trial court cannot regulate the behavior of a Chehalis tribal member by imposing a crime-related prohibition on activities within the Chehalis Indian Reservation. Accordingly, we affirm the crime-related prohibition as it applies to state land. But we vacate the crime-related prohibition as it purported to extend, or could be interpreted to extend, to fishing within the Chehalis Indian Reservation. We remand for the trial court to conduct a hearing and to enter a corrected judgment, which clarifies that the state trial court's imposition of a crime-related prohibition does not apply to activities within the Chehalis Indian Reservation.

## FACTS

¶2 Gerald Cayenne is a tribal member of the Chehalis Tribe of the Chehalis Indian Reservation in southwest Washington. During the spring and summer of 2005, Washington State Department of Fish and Wildlife officers observed Cayenne unlawfully gillnetting in the Chehalis River, not too far from the Chehalis Indian Reservation. Thereafter, the officers arrested him. And the State charged Cayenne with two counts of felony first degree unlawful use of nets to take fish, contrary to RCW 77.15.580(2) and (3)(b).

¶3 A jury found Cayenne guilty of count two as charged. The trial court sentenced him to eight months of confinement and, among other things, prohibited him from possessing any gill nets. In response to whether the prohibition would apply on the Chehalis Indian Reservation, the trial court stated:

I am going to make it a condition that he have no gill nets period. I don't know that they are going to catch him on the reservation. I don't know what I would do with—I don't think

he should have a gill net. I think he has forfeited his right to do that.

Report of Proceedings (March 1, 2006) at 5.

¶4 Cayenne appeals, arguing that the trial court exceeded its authority when it prohibited him from possessing any gill nets on the Chehalis Indian Reservation.

## ANALYSIS

¶5 Under the Sentencing Reform Act of 1981, the trial court is permitted to impose crime-related prohibitions as part of a sentence.[1] RCW 9.94A.505(8); *State v. Hearn*, 131 Wn. App. 601, 607-08, 128 P.3d 139 (2006). But the trial court possesses only the power to impose sentences the law allows. *In re Pers. Restraint of Carle*, 93 Wn.2d 31, 33, 604 P.2d 1293 (1980). "When a sentence has been imposed for which there is no authority in law, the trial court has the power and duty to correct the *erroneous* sentence, when the error is discovered." *McNutt v. Delmore*, 47 Wn.2d 563, 565, 288 P.2d 848 (1955), *cert. denied*, 350 U.S. 1002 (1956); *see State v. Palmer*, 73 Wn.2d 462, 475, 438 P.2d 876, *cert. denied*, 393 U.S. 954 (1968); *see also Heflin v. United States*, 358 U.S. 415, 418, 79 S. Ct. 451, 3 L. Ed. 2d 407 (1959).

¶6 The principles governing the resolution of this case are not new. *McClanahan v. Ariz. State Tax Comm'n*, 411 U.S. 164, 168, 93 S. Ct. 1257, 36 L. Ed. 2d 129 (1973). Traditionally, courts have considered Indian nations as "distinct political communities, having territorial boundaries, within which their authority is exclusive, and having a right to all the lands within those boundaries, which is not only acknowledged, but guaranteed by the United States." *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 557, 8 L. Ed. 483 (1832). Under this concept of Indian sovereignty, only the federal government, through its constitution and laws, is empowered with jurisdiction over dealings with Indian nations, even though the Indian lands fall within the geographical boundaries of individual states. *Worcester*,

---

[1] "A crime-related prohibition will be reversed only if it is manifestly unreasonable." *State v. Hearn*, 131 Wn. App. 601, 607-08, 128 P.3d 139 (2006).

31 U.S. (6 Pet.) at 557. The laws of the individual states, therefore, have no force on the reservations. *Worcester*, 31 U.S. (6 Pet.) at 561. "The whole intercourse between the United States and [Indian nations] is, by our constitution and laws, vested in the government of the United States." *Worcester*, 31 U.S. (6 Pet.) at 561.

¶7 In 1864, the Secretary of the Interior by order established the Chehalis Indian Reservation, setting aside land in southwest Washington for the Chehalis Indian Tribe.[2] *Confederated Tribes of Chehalis Indian Reservation v. Washington*, 96 F.3d 334, 338 (9th Cir. 1996); *see also* 1 INDIAN AFFAIRS: LAWS AND TREATIES 903 (Charles J. Kappler ed., 1904). The Chehalis Tribe is a self-governing Indian tribe, organized under the Indian Reorganization Act of 1934[3] and recognized as such by the Secretary of the Interior.

¶8 The Chehalis Indian Tribe has its own independent government, with a constitution and bylaws that were adopted on July 15, 1939. *See* INDIAN TRIBAL CODES: A MICRO-FICHE COLLECTION OF INDIAN TRIBAL LAW CODES (Ralph W. Johnson ed., 1988) (Marian Gould Gallagher Law Library, Univ. of Wash. Sch. of Law); *Upper Chehalis Tribe v. United States*, No. 237, 12 Indian Claims Commission Decisions 644, 653 (Oct. 7, 1963) (Additional Finding of Fact 30), *available at* http://digital.library.okstate.edu/icc/index.html (last visited May 2007). And the Chehalis Indian Tribe is a member of the Northwest Intertribal Court System, which acts as a personnel bank and provides direct court-related services. *See* WASH. STATE FORUM TO SEEK SOLUTIONS TO JURIS-DICTIONAL CONFLICTS BETWEEN TRIBAL & STATE COURTS, TRIBAL COURT HANDBOOK FOR THE 26 FEDERALLY RECOGNIZED TRIBES IN

---

[2] In 1886, President Grover Cleveland ordered that the land "reserved for the use and occupation of the Chehalis Indians . . . be . . . restored to the public domain." 1 INDIAN AFFAIRS: LAWS AND TREATIES 903 (Charles J. Kappler ed., 1904). This order, and similar orders in 1908 and 1909, allowed the Chehalis Indians to immediately obtain homestead on the reservation under the homestead laws. *Confederated Tribes of Chehalis Indian Reservation v. Washington*, 96 F.3d 334, 339 (9th Cir. 1996).

[3] *See* 25 U.S.C. §§ 461-494a.

WASHINGTON STATE 4 (Ralph W. Johnson & Rachael Paschal eds., 2d ed. 1992).

¶9 Our courts have recognized Indian tribes as "unique aggregations possessing attributes of sovereignty over both their members and their territory; they are 'a separate people' possessing 'the power of regulating their internal and social relations . . . .'" *United States v. Mazurie*, 419 U.S. 544, 557, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975) (alteration in original) (citation omitted) (quoting *United States v. Kagama*, 118 U.S. 375, 381-82, 6 S. Ct. 1109, 30 L. Ed. 228 (1886)). "'[T]he policy of leaving Indians free from state jurisdiction and control is deeply rooted in the Nation's history.'" *McClanahan*, 411 U.S. at 168 (quoting *Rice v. Olson*, 324 U.S. 786, 789, 65 S. Ct. 989, 89 L. Ed. 1367 (1945)).[4] "Thus, Congress has consistently acted upon the assumption that the states have no power to regulate affairs of Indians on reservations and has expressly granted jurisdiction to the states when it has desired to do so." *In re Adoption of Buehl*, 87 Wn.2d 649, 654, 555 P.2d 1334 (1976) (citing *Williams v. Lee*, 358 U.S. 217, 220, 79 S. Ct. 269, 3 L. Ed. 2d 251 (1959)).

¶10 In 1953, Congress enacted Public Law 83-280 and provided the states with the power to assume jurisdiction over the reservations. *McClanahan*, 411 U.S. at 178 n.17. "The statute was an attempt to strike a balance between abandoning the Indian to the states and maintaining them as wards of the federal government, subject only to federal or tribal jurisdiction." *Buehl*, 87 Wn.2d at 655 (citing Carole Goldberg, *Public Law 280: The Limits of State Jurisdiction Over Reservation Indians*, 22 UCLA L. REV. 535, 537 (1975)). Public Law 83-280 gave the consent of the United States to states, including Washington, "to assume jurisdiction [over criminal offenses and civil causes of action] at

---

[4] Nevertheless, this concept of Indian sovereignty has not remained constant during the last century. *In re Adoption of Buehl*, 87 Wn.2d 649, 654, 555 P.2d 1334 (1976). While the basic policy of *Worcester* has remained, the Supreme Court has modified this policy "in cases where essential tribal relations were not involved and where the rights of Indians would not be jeopardized." *Williams v. Lee*, 358 U.S. 217, 219, 79 S. Ct. 269, 3 L. Ed. 2d 251 (1959); *Buehl*, 87 Wn.2d at 654.

such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof." Pub. L. No. 83-280, ch. 505, § 7, 67 Stat. 588, 590 (1953).

¶11 In 1957, the Washington Legislature took affirmative action under Public Law 83-280 and enacted chapter 37.12 RCW. *Buehl*, 87 Wn.2d at 656 n.5. Specifically, RCW 37-.12.010 permitted the State to assume civil and/or criminal jurisdiction over reservations only after a request from individual Indian tribes. *Buehl*, 87 Wn.2d at 656 n.5. Nine tribes so requested, including the Chehalis Indian Tribe. *See* TRIBAL COURT HANDBOOK, *supra*, at 8.

¶12 In 1963, the Washington Legislature amended chapter 37.12 RCW and extended jurisdiction over some matters without prior tribal consent. *Buehl*, 87 Wn.2d at 656 n.5; *Tonasket v. State*, 84 Wn.2d 164, 525 P.2d 744 (1974). As amended in 1963, RCW 37.12.010 now provides:

> The state of Washington hereby obligates and binds itself to assume criminal and civil jurisdiction over Indians and Indian territory, reservations, country, and lands within this state in accordance with the consent of the United States given by the act of August 15, 1953 (Public Law 280, 83rd Congress, 1st Session), but such assumption of jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States, unless the provisions of RCW 37.12.021 have been invoked, except for the following:
>
> (1) Compulsory school attendance;
>
> (2) Public assistance;
>
> (3) Domestic relations;
>
> (4) Mental illness;
>
> (5) Juvenile delinquency;
>
> (6) Adoption proceedings;
>
> (7) Dependent children; and
>
> (8) Operation of motor vehicles upon the public streets, alleys, roads and highways: PROVIDED FURTHER, That

Indian tribes that petitioned for, were granted and became subject to state jurisdiction pursuant to this chapter on or before March 13, 1963 shall remain subject to state civil and criminal jurisdiction as if chapter 36, Laws of 1963 had not been enacted.

¶13 In 1968, Congress enacted the Indian Civil Rights Act[5] and amended Public Law 83-280 so that, henceforth, no state could acquire jurisdiction over the objections of affected Indians. 25 U.S.C. § 1326; *Buehl*, 87 Wn.2d at 656 n.5. This act was not retroactive, and it did not affect pre-1968 state jurisdictional assumptions under Public Law 83-280. *See Estate of Cross v. Comm'r*, 126 Wn.2d 43, 47, 891 P.2d 26 (1995).

¶14 But the act did authorize the states, with tribal and federal consent, to retrocede jurisdiction from the state to the federal government. 25 U.S.C. § 1323(a). In 1986, the Washington Legislature enacted RCW 37.12.100, which provided a procedure for retrocession of criminal jurisdiction over Indians for acts occurring on the Colville reservation.[6] LAWS OF 1986, ch. 267, § 2. In 1988, the legislature extended RCW 37.12.100 to the Quileute, Chehalis, and Swinomish reservations.[7] LAWS OF 1988, ch. 108, § 1. The procedure for transfer of jurisdiction is detailed in RCW 37.12.120:

Whenever the governor receives from the confederated tribes of the Colville reservation or the Quileute, Chehalis, Swinomish, Skokomish, Muckleshoot, or Tulalip tribe a resolution expressing their desire for the retrocession by the state of all or any measure of the criminal jurisdiction acquired by the state pursuant to RCW 37.12.021 over lands of that tribe's reservation, the governor may, within ninety days, issue a proclamation retroceding to the United States the criminal jurisdiction

---

[5] 25 U.S.C. §§ 1301-1303.

[6] Retrocession does not affect the "imposed" state jurisdiction under the 1963 law. *See* TRIBAL COURT HANDBOOK, *supra*, at 9.

[7] The legislature has since extended RCW 37.12.100 to the Skokomish, Muckleshoot, and Tulalip tribes. LAWS OF 1995, ch. 202, § 1; LAWS OF 1995, ch. 177, § 1; LAWS OF 1994, ch. 12, § 1.

previously acquired by the state over such reservation. However, the state of Washington shall retain jurisdiction as provided in RCW 37.12.010. The proclamation of retrocession shall not become effective until it is accepted by an officer of the United States government in accordance with 25 U.S.C. Sec. 1323 (82 Stat. 78, 79) and in accordance with procedures established by the United States for acceptance of such retrocession of jurisdiction. The Colville tribes and the Quileute, Chehalis, Swinomish, Skokomish, Muckleshoot, and Tulalip tribes shall not exercise criminal or civil jurisdiction over non-Indians.

¶15   Retrocession is effected by publication in the *Federal Register*, which shall specify the effective date of retrocession. *State v. Hoffman*, 116 Wn.2d 51, 70, 804 P.2d 577 (1991). In 1989, the United States government accepted this state's proclamation of retrocession of criminal jurisdiction over the Chehalis Indian Reservation. 54 Fed. Reg. 19,959 (May 9, 1989).

¶16   Clearly, the State may try Cayenne for his criminal acts committed off the reservation. *DeCoteau v. District County Court*, 420 U.S. 425, 427 n.2, 95 S. Ct. 1082, 43 L. Ed. 2d 300 (1975). But because the State has no criminal jurisdiction over the Chehalis Indian Reservation, it cannot regulate the behavior of Chehalis Indians by imposing state crime-related prohibitions, as part of a sentence, on activities within the Chehalis Indian Reservation.[8] Nor can the Chehalis Indian Tribe confer jurisdiction on the state courts by agreement. *See Kennerly v. Dist.*

---

[8] In general, the State may regulate on-reservation hunting, fishing, and gathering by tribal members only in "exceptional circumstances." *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 331-32, 103 S. Ct. 2378, 76 L. Ed. 2d 611 (1983). In *Puyallup Tribe, Inc. v. Department of Game*, 433 U.S. 165, 97 S. Ct. 2616, 53 L. Ed. 2d 667 (1977), the Supreme Court upheld the State's authority to regulate on-reservation fishing by tribal members. In *Puyallup*, the on-reservation lands at issue no longer belonged to the tribe, the treaty accorded the tribe a right in common with all citizens of the territory, and the State had an interest in conserving a scarce, common resource. *Puyallup*, 433 U.S. at 175-77; *see also Mescalero Apache Tribe*, 462 U.S. at 332 n.15.

In particular, the Chehalis Indian Tribe has not granted away any of its exclusive fishing rights. *State v. Stritmatter*, 102 Wn.2d 516, 521, 688 P.2d 499 (1984). Therefore, any regulation or prohibition by the State "must be a necessary conservation measure and must also be the least restrictive means available for

*Court*, 400 U.S. 423, 427-30, 91 S. Ct. 480, 27 L. Ed. 2d 507 (1971) (vote by tribal council to permit state jurisdiction over reservation held insufficient to vest state with jurisdiction). Finally, even if tribal law were to regulate the behavior of Chehalis Indians in this circumstance, it is not the province of a nontribal court to impose punishment on a member who engages in such activity on the reservation.

¶17 Because the trial court in this case exceeded its authority by attempting to extend the criminal jurisdiction of the Washington courts to regulate the behavior of a Chehalis Indian on his reservation, we hold that the prohibition against possessing gill nets is void as unenforceable.[9]

¶18 We affirm the crime-related prohibition as it applies to State land. But we vacate the crime-related prohibition as it purported to extend, or could be interpreted to extend, to fishing within the Chehalis Indian Reservation. We remand for the trial court to conduct a hearing and to enter a corrected judgment, which clarifies that the State trial court's imposition of a crime-related prohibition does not apply to activities within the Chehalis Indian Reservation.

ARMSTRONG and QUINN-BRINTNALL, JJ., concur.

Reconsideration denied July 9, 2007.

Review granted at 163 Wn.2d 1017 (2008).

---

preserving area fisheries from irreparable harm." *Stritmatter*, 102 Wn.2d at 522. And the State must demonstrate that its regulation is a reasonable and necessary conservation measure. *See Antoine v. Washington*, 420 U.S. 194, 207, 95 S. Ct. 944, 43 L. Ed. 2d 129 (1975).

Here, the State has failed to demonstrate that the prohibition against possessing any gill nets on the Chehalis Indian Reservation was anything more than a crime-related prohibition as part of a sentence.

[9] Because of the facts in this case, we do not address any issue where the State has retained jurisdiction or where the United States has jurisdiction. *See, e.g.,* 18 U.S.C. § 1153; RCW 37.12.010.