**UNITED STATES of America, Plaintiff–Appellee,**

v.

**David James BAKER, Defendant–Appellant.**

No. 89–1006.

United States Court of Appeals, Tenth Circuit.

Jan. 16, 1990.

James R. Allison, Asst. U.S. Atty. (Michael J. Norton, Acting U.S. Atty., with him on the brief), Denver, Colo., for plaintiff-appellee.

Mark D. Eibert, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with him on the brief), Denver, Colo., for defendant-appellant.

Before LOGAN, SETH, and MOORE, Circuit Judges.

PER CURIAM.

Defendant appeals from his conviction on one count of manufacturing methamphetamine and one count of possession of the precursor P2P with intent to manufacture methamphetamine, both in violation of 21 U.S.C. § 841(a)(1), and also seeks review of the sentences subsequently imposed by the district court thereon. The primary issue presented on this appeal concerns the denial of defendant's motion to suppress evidence obtained through a search within Indian country authorized and conducted solely by state authorities. Because we decide that the motion should have been granted, and the district court's failure to so rule cannot, on the record before us, be characterized as harmless, we reverse defendant's conviction without reaching the additional, analytically independent issues raised herein.

**1146**

On September 13, 1989, deputy sheriff James Ezzell, an investigator with the La Plata County Sheriff's Department, applied for and obtained a warrant from the District Court of La Plata County, Colorado, to search the residence and outbuildings of a parcel of property recently rented by defendant. At no point during the pertinent events, from application for the warrant through its execution, were federal officers in any way involved in the proceedings. Ultimately, however, evidence of illegal activity recovered during the search was made available to federal authorities, who utilized the evidence, over objection, in obtaining defendant's conviction below.

■ Defendant contends that the search warrant was void as beyond the issuing state court's jurisdiction pursuant to 18 U.S.C. §§ 1151–1153, because it purports to authorize a search for evidence of criminal activity on property rented by an enrolled member of the Southern Ute Tribe and located within the exterior boundaries of Southern Ute tribal lands. Since it is undisputed that defendant's property was located within Indian country and Colorado has never obtained an extension of its jurisdiction to include such lands, we must agree with defendant that the La Plata County District Court acted beyond its authority in issuing the search warrant for evidence of suspected criminal activity on defendant's property. *See United States v. Burnett,* 777 F.2d 593, 596 (10th Cir. 1985) (expressly noting "agreement with analysis and conclusion" in *State v. Burnett,* 671 P.2d 1165, 1166–68 (Okla.Crim. App.1983), which held that state criminal jurisdiction over Indian country is precluded unless state has previously manifested by affirmative political action its intent to assume jurisdiction pursuant to 25 U.S.C. § 1321(a)), *cert. denied,* 476 U.S. 1106, 106 S.Ct. 1952, 90 L.Ed.2d 361 (1986); *Langley*

*v. Ryder,* 778 F.2d 1092, 1095–96 (5th Cir. 1985) (once land is determined to be Indian country, state criminal jurisdiction is preempted on subjects relating to Indians, tribes, and their property, absent the consent of Congress to such jurisdiction); *see, e.g., Bartlett v. Solem,* 691 F.2d 420, 421 (8th Cir.1982) (en banc) (affirming grant of habeas corpus petition on ground that state lacked jurisdiction to prosecute tribal member for offense committed within Indian country), *aff'd,* 465 U.S. 463, 467 n. 8, 104 S.Ct. 1161, 1164 n. 8, 79 L.Ed.2d 443 (1984) (noting exclusive federal and tribal criminal jurisdiction under §§ 1152, 1153); *see also Cheyenne–Arapaho Tribes v. Oklahoma,* 618 F.2d 665, 668 (10th Cir.1980) ("States have no authority over Indians in Indian country unless it is expressly conferred by Congress").

■ The government argues against application of the general exclusion of state jurisdiction over Indian country on two grounds. First, the government maintains that this case falls within the exception to exclusive federal and tribal jurisdiction established in *United States v. McBratney,* 104 U.S. 621, 26 L.Ed. 869 (1881). Subsequent case law, however, has for some time quite clearly limited the *McBratney* exception to crimes committed *by* non-Indians *against* non-Indians, *see, e.g., United States v. Antelope,* 430 U.S. 641, 643 n. 2, 648 n. 9, 97 S.Ct. 1395, 1397 n. 2, 1399–1400 n. 9, 51 L.Ed.2d 701 (1977); *Williams v. United States,* 327 U.S. 711, 714–15 n. 10, 66 S.Ct. 778, 780 n. 10, 90 L.Ed. 962 (1946); *Donnelly v. United States,* 228 U.S. 243, 271–72, 33 S.Ct. 449, 458–59, 57 L.Ed. 820 (1913), and the government failed to establish either of these conjunctive factual predicates below.[1] Second, the government invokes Fed.R.Crim.P. 41, which provides for state court issuance of a

---

**1.** Since neither the search warrant nor the underlying affidavit identifies or describes a single non-Indian suspect in connection with the criminal activity on defendant's property, we do not decide whether an Indian's property within Indian country may be searched on state authority for evidence of a non-Indian's so-called "victimless crime." *See generally Solem,* 465 U.S. at 465 n. 2, 104 S.Ct. at 1163 n. 2 (stating, in dicta,

that "state jurisdiction is limited to crimes by non-Indians against non-Indians ... and victimless crimes by non-Indians"); R. Clinton, *Criminal Jurisdiction over Indian Lands: A Journey through a Jurisdictional Maze,* 18 Ariz.L.Rev. 503, 529–30 (1976); D. Getches, D. Rosenfelt & C. Wilkinson, *Cases and Materials on Federal Indian Law* at 388 (1979).

federal search warrant "upon request of a federal law enforcement officer or an attorney for the government." Because the quoted condition in Rule 41 was not satisfied and the search was not otherwise "federal in character," *see generally United States v. Bookout*, 810 F.2d 965, 967 (10th Cir.1987); *United States v. Gibbons*, 607 F.2d 1320, 1325 (10th Cir.1979), the rule cannot serve to transform the illegal state search warrant into a legal federal one.

Accordingly, we hold that the search of defendant's property was not authorized by a valid warrant. Since the government does not argue that the constitutionality of the search may be upheld on some alternative basis, the evidence obtained through the search was not admissible in defendant's federal prosecution, absent the availability of an exception to the exclusionary rule. *See United States v. Stone*, 866 F.2d 359, 362 (10th Cir.1989) (citing *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) for settled rule that evidence obtained by state officers in violation of fourth amendment strictures is inadmissible in a federal criminal trial).

The government contends that the exception established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), permitting admission of evidence obtained pursuant to a defective search warrant so long as the officer(s) who obtained and executed the warrant acted in objective good faith, is applicable here and justifies admission of the evidence seized on defendant's premises. Defendant presents a two-level argument in response. First, defendant argues, *Leon* and *Sheppard* are not pertinent where, as here, the constitutional infirmity does not arise from either a defect in the warrant or the lack of probable cause, but rather from the issuing court's lack of jurisdiction to authorize the search in the first instance.

Although it is true, as defendant emphasizes, that *Leon* and *Sheppard* have been held inapplicable to most warrantless searches, *see, e.g., United States v. Curzi*, 867 F.2d 36, 44–45 (1st Cir.1989) and authorities cited therein, the case at bar, involving a warrant but one that was essentially void *ab initio*, appears to fall somewhere between the two poles occupied by the defective-warrant and absent-warrant cases. Neither party has cited any authority on point either for or against application of *Leon* and *Sheppard* to this situation,[2]

**2.** At oral argument, defense counsel raised the contention that the underscored reference to jurisdictional authority in the following excerpt from *Sheppard* reflects the Supreme Court's intention to exclude, as a class, all jurisdictionally invalid searches from the potential scope of the good faith exception:

> [W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the [initially inadequate but judicially corrected] warrant he possesses authorized him to conduct the search he has requested. In *Massachusetts*, as in most jurisdictions, *the determinations of a judge acting within his jurisdiction, even if erroneous, are valid and binding until they are set aside under some recognized procedure.* Streeter v. City of Worcester, 336 Mass. 469, 472, 146 N.E.2d 514, 517 (1957); Moll v. Township of Wakefield, 274 Mass. 505, 507, 175 N.E. 81, 82 (1931). If an officer is required to accept at face value the judge's conclusion that a warrant form is invalid, there is little reason why he should be expected to disregard assurances that everything is all right, especially when he has alerted the judge to the potential problems.

*Sheppard*, 468 U.S. at 989–90, 104 S.Ct. at 3428–29 (emphasis added and footnote omitted). However, the analytical context of this reference to jurisdiction shows that the Court was not at all concerned with, much less anticipating and resolving, the issue that is our immediate concern. Indeed, the theoretical applicability of *Leon*, disputed by defendant here, was one of the accepted premises with which the *Sheppard* Court began its reasoning several pages prior to the passage relied upon by defendant. *See id.* at 987–88, 104 S.Ct. at 3428 ("*Having already decided* [in *Leon* ] that the exclusionary rule should not be applied when the officer ... acted in objectively reasonable reliance on [an invalid] warrant ..., the *sole issue* before us *in this case* is whether the officers reasonably believed that the search they conducted was authorized by a valid warrant"). Thus, far from isolating and ruling on the threshold matter of the potential availability of the good faith exception by reference to the jurisdictional authority of the warrant-issuing judge, the Court was already well into the second step of the analysis and concerned with providing the rationale for its holding that the officers had, in fact, acted in good faith. The last sentence in the quoted paragraph makes it fairly clear that the "valid

and we have found little. *See Commonwealth v. Shelton*, 766 S.W.2d 628, 629–30 (Ky.1989) (reading *Leon* as applicable only to "technically deficient" warrants and stating, "[w]e do not believe that *Leon* would be applicable [in context of jurisdictionally invalid warrant] were we otherwise inclined to follow its precedent"); *id.* at 630–31 (Gant, J., dissenting) (reading *Leon* as applicable to invalid warrants generally and arguing that, based on the deterrence considerations underlying the exclusionary rule and its good faith exception, the latter should be available in cases where the issuing court's jurisdiction is called into question); *State v. Brady*, 130 Wis.2d 443, 388 N.W.2d 151, 156–57 (1986) (Abrahamson, J., concurring) (maintaining that "this is not an appropriate case for deciding whether this court should adopt the *Leon* good faith exception to the exclusionary rule," precisely because "[i]t is not clear whether *Leon* and *Sheppard* apply ... to cases such as this one in which the magistrate has no authority whatsoever to issue the warrant"). While we acknowledge this issue that the parties have engaged, we do not purport to resolve it, as it is unnecessary to our disposition of this appeal. For even assuming the pertinence of *Leon* and *Sheppard* here, we agree with defendant's second line of argument that the government has not, in any event, satisfied the standard these cases impose. *See generally, e.g., Brady*, 130 Wis.2d 443, 388 N.W.2d 151, 156 (majority similarly electing not to resolve issue of *Leon's* applicability where requisite objective good faith lacking in any event).

■ Entitlement to the exception established in *Leon* and *Sheppard* depends on the objective good faith of the officer(s) applying for and executing the warrant. Thus, evidence obtained through an improper search will be excluded only if, under the objective circumstances presented

to the officer(s) in question, "a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Malley v. Briggs*, 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986), quoting *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23; *see also Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987) (objective good faith determination encompasses information possessed by the particular officer(s) engaged in the challenged search). Here, the affidavit submitted by deputy sheriff Ezzell to obtain the search warrant shows that Ezzell knew the two crucial facts undermining the state court's authority to issue the warrant: "To the best of your Affiant's knowledge, ... the property is located within the exterior boundaries of the Southern Ute Indian Tribe ... [and] [t]he individual renting the property, David Baker, is a registered member of the Southern Ute Indian Tribe." Indeed, the affidavit itself reflects Ezzell's existing doubts concerning the state court's authority, noting that "the actual criminal jurisdiction of this matter is unclear" and explaining that the state court is only being approached "[s]ince the Federal magistrate is unavailable." In light of the clearly established nature of the state's jurisdictional limitations in Indian country already discussed, and Ezzell's knowledge of the operative, objective facts, we cannot say Ezzell's conduct in nevertheless applying for and executing the search warrant is what should be expected of a reasonably well-trained officer with nine years experience in a county incorporating Indian lands.

The government seeks to avoid this adverse conclusion by raising three points, none of which we find persuasive. First of all, the government emphasizes that Ezzell's affidavit also shows he knew the land rented by defendant was owned by a non-Indian residing in New Mexico. This fact, the government contends, raised sufficient

and binding" status of the state judge's conclusion regarding the adequacy of the revised warrant (which status was dependent upon the proper exercise of his jurisdictional authority) was noted to buttress the Court's determination regarding the objective reliability of the assurances given to the officers executing the war-

rant, not to explain why the Court was evaluating the reasonableness of the officers' reliant conduct in the first place. We discern no basis for reading into the quoted passage an uncharacteristically indirect announcement of a categorical limitation on the scope of the good faith exception.

doubt regarding the Indian character of the searched property to justify Ezzell's procurement of the warrant. Nearly thirty years ago, however, the Supreme Court recognized that the issue whether private property owned by non-Indians but situated within the boundaries of an Indian reservation is still "Indian country" for jurisdictional purposes had been "squarely put to rest [in favor of inclusion] by congressional enactment of the currently prevailing definition of Indian country in § 1151 to include 'all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent....'" *Seymour v. Superintendent,* 368 U.S. 351, 357–58, 82 S.Ct. 424, 428, 7 L.Ed.2d 346 (1962). Indeed, some three years before the search of defendant's property, the Colorado Court of Appeals specifically relied on *Seymour* to reject the argument that a parcel of Southern Ute Reservation land had lost its Indian country status through conveyance to a non-Indian. *See People v. Luna,* 683 P.2d 362, 365 (Colo.App.1984) (reversing Indian defendants' state controlled-substances conviction for lack of jurisdiction). Consequently, Ezzell's knowledge of the private, non-Indian ownership of the property rented by defendant does not alter our evaluation regarding the reasonableness of his conduct.

Next, the government suggests that we sanction Ezzell's conduct because he apprised the state court of both the relevant facts and his own doubts concerning state criminal jurisdiction and only proceeded with the search after the court issued the warrant notwithstanding the problem outlined in his affidavit. However, the Supreme Court has made it clear that, while more expertise in this regard may be expected of a judicial official, where, as we have already held here, a reasonably well-trained law enforcement officer should himself have been aware that a proposed search would be illegal, a judicial official's concurrence in the improper activity does not serve to bring it within the rule of *Leon* and *Sheppard.*[3] *See Malley,* 475 U.S. at 345–46 and n. 9, 106 S.Ct. at 1098–99 and n. 9; *see also Coen v. Runner,* 854 F.2d 374, 377 (10th Cir.1988); *United States v. Burzynski Cancer Research Inst.,* 819 F.2d 1301, 1309 (5th Cir.1987), *cert. denied,* 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988).

Finally, the government discusses Ezzell's generally prudent conduct of the investigation in defendant's case at some length, particularly his efforts to contact a federal magistrate for a search warrant prior to his resort to the state court, in order to bolster its claim that Ezzell acted in good faith. Defendant responds in kind with an extensive list of alternative courses of action open to but neglected by Ezzell, in order to undercut the government's claim. All of this is scarcely relevant to the issue at hand. We are concerned with the officer's decision to seek and execute a state warrant to search defendant's property in the face of clearly established law recognizing that such a warrant would be beyond

3. This is not to say that reliance on the assurance implicit in the issuance of a warrant should not be considered in the initial determination regarding the law enforcement officer's judgment in any particular case. *See United States v. Cook,* 854 F.2d 371, 372–73 (10th Cir. 1988) (evaluating objective good faith under *Leon* in terms of reasonableness of officer's reliance on search warrant issued by state court judge), *cert. denied,* — U.S. —, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989). However, since we hold that officer Ezzell clearly should have known, before and after he obtained the warrant, that the search reviewed here would be illegal, we need not and do not decide precisely what favorable weight may be given to an officer's reliance on a judicial official's opinion regarding the uncertain propriety of a particular contemplated search. *Compare, e.g., United States v. Martin,* 833 F.2d 752, 755 (8th Cir.1987) (citing *Malley* only for proposition that officer "may not rely *entirely* on the magistrate's finding of probable cause") *with id.* at 756–57 (Lay, C.J., concurring) (disagreeing with "great weight" attached by majority to magistrate's finding that probable cause had been established, and concluding that magistrate's issuance of warrant is "irrelevant to the question of the officer's good faith") *with Martin v. D.C. Metropolitan Police Department,* 812 F.2d 1425, 1434 n. 20 (D.C.Cir.) (magistrate's determination should carry "some weight" in inquiry regarding officer's good faith), *op. vacated by,* 817 F.2d 144, *op. reinstated on rec. by,* 824 F.2d 1240 (1987) (en banc).

**1150**

the jurisdiction of the state court. The officer's general conduct of the investigation and his initial attempt to contact an appropriate federal official cannot make his eventual resort to an unauthorized state tribunal reasonable.

The judgment of conviction entered by the United States District Court for the District of Colorado is REVERSED.