10

[No. 80499-1.   En Banc.]
Argued September 11, 2008.     Decided November 13, 2008.

THE STATE OF WASHINGTON, *Petitioner*, v. GERALD CAYENNE,
*Respondent*.

*Pamela B. Loginsky* (of *Washington Association of Prosecuting Attorneys*), and *H. Steward Menefee, Prosecuting Attorney*, for petitioner.

*David L. Donnan* and *Gregory C. Link* (of *Washington Appellate Project*), for respondent.

*Jay D. Geck* on behalf of the Office of the Attorney General, amicus curiae.

¶1 C. JOHNSON, J. — This case involves a challenge to a sentencing condition imposed on a Native American tribal member convicted for off-reservation, illegal fishing. The fishing involved the use of a gillnet, and the sentencing judge ordered the defendant not to own any gillnet. The Court of Appeals partially vacated the condition, holding the sentencing court had no authority to restrict a tribal member's rights while on the reservation. We reverse.

## FACTS

¶2 Gerald Cayenne is an enrolled member of the Chehalis Indian Tribe, which has its reservation in southwest Washington. The Chehalis tribe enjoys an exclusive right to fish within its reservation boundaries. As a non-treaty tribe, the Chehalis tribal members are subject to all state laws when fishing on non-tribal lands. In 2005, Washington State Department of Fish and Wildlife officers

twice observed Cayenne unlawfully gillnetting in the Chehalis River while on non-tribal land. The officers arrested Cayenne, and the State charged him by information with two counts of felony first degree unlawful use of nets to take fish, violating RCW 77.15.580. Under this statute, a person is guilty if the person lays, sets, uses, or controls a net capable of taking fish from state waters and the person is not licensed to do so.

¶3 A jury convicted Cayenne of count two. As part of Cayenne's eight-month sentence, the trial court prohibited Cayenne from owning gillnets during the term of his sentence, on and off the reservation. Cayenne appealed, arguing the trial court exceeded its authority to impose a crime-related prohibition restricting his on-reservation behavior with respect to fishing. The appellate court agreed and vacated the crime-related prohibition as it extended "or could be interpreted to extend, to fishing within the Chehalis Indian Reservation." *State v. Cayenne*, 139 Wn. App. 114, 124, 158 P.3d 623 (2007). We granted the State's petition for review.[1]

## ISSUE

¶4 Whether a state trial court has authority to impose crime-related sentence conditions regulating the activities of a tribal member on tribal land when the condition relates to fishing?

## ANALYSIS

¶5 Generally, a superior court has original jurisdiction over all criminal cases amounting to felonies that are committed, in whole or in part, within the state of Washington. CONST. art. IV, § 6; RCW 9A.04.030(1). This jurisdiction does not extend to an offense committed by a tribal member upon trust property located within the geographi-

---

[1] The attorney general of Washington also submitted an amicus curiae brief in support of the State's petition.

cal boundaries of a reservation. CONST. art. XXV; RCW 37.12.010. Here, Cayenne committed his felony offense outside the Chehalis Indian Reservation boundaries. As such, the state court not only had jurisdiction but, important to the issue in this case, the court also had personal jurisdiction over the defendant.

¶6 Generally, as part of any sentence, the sentencing judge may impose and enforce crime-related prohibitions and affirmative conditions. RCW 9.94A.505(8). A crime-related prohibition is "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted . . . ." RCW 9.94A.030(13). Crime-related prohibitions may extend for a period of time not to exceed the statutory maximum for the defendant's crime. *State v. Armendariz*, 160 Wn.2d 106, 118-19, 156 P.3d 201 (2007).

¶7 Neither party disputes the power of the trial court to impose this crime-related prohibition as applied to non-tribal lands. But Cayenne contends that the trial court lacks authority to extend the prohibition to his activities within the boundaries of the Chehalis Indian Reservation. However, Cayenne's argument misses the distinction between jurisdiction over an on-reservation crime from that over an off-reservation crime. *See Nevada v. Hicks*, 533 U.S. 353, 362, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (2001) ("It is . . . well established in our precedent that States have criminal jurisdiction over reservation [tribal members] for crimes committed . . . off the reservation."). The Court of Appeals also appears to have overlooked this distinction in holding the trial court acted extra-jurisdictionally.

¶8 In *Hicks*, which is relevant here, the United States Supreme Court considered the State's interest in serving process on a defendant to enforce an off-reservation poaching law and whether that notion interfered with the tribe's right to make its own laws and be governed by them. The Court noted that states generally lack authority to enforce their laws when their interests lie solely in on-reservation tribal member conduct. In contrast, where a

state has interests outside the reservation, the Court held a tribal member's activities on tribal lands may be regulated. *Hicks*, 533 U.S. at 362. In other words, jurisdiction is not exclusive and, as the Court declared, "State sovereignty does not end at a reservation's border." *Hicks*, 533 U.S. at 361. That same reasoning applies here.

¶9 Here, the State has an interest in imposing sentences for an off-reservation crime. That interest includes sentencing conditions. But Cayenne argues that prohibiting him from owning gillnets impairs his right to fish on the Chehalis Indian Reservation. He bases this argument on *State v. Stritmatter*, 102 Wn.2d 516, 522, 688 P.2d 499 (1984).

¶10 In *Stritmatter*, we considered but did not alter the extent of the non-treaty Chehalis tribe's aboriginal right to fish. An executive order established the Chehalis Indian Reservation. This order set apart certain land for the use and occupation of the Chehalis tribe. Courts have interpreted the language " 'for the use and occupation' " as reserving exclusive hunting and fishing rights to the tribe within its reservation. *Stritmatter*, 102 Wn.2d at 520 (quoting 1 INDIAN AFFAIRS: LAWS AND TREATIES 904 (Charles J. Kappler ed., 1903)). The scope of these exclusive rights depends upon the tribe's exercise of its rights prior to the establishment of the tribe's reservation. Historically, the Chehalis tribe took fish from the Chehalis River for both subsistence and commercial purposes. As such, we determined the non-treaty Chehalis tribe has an exclusive, on-reservation right to fish. We noted the Chehalis tribe's fishing rights are similar to those of a tribe in Michigan. The State of Michigan's authority to regulate that tribe's right to fish is limited to necessary conservation measures using the least restrictive means for preserving area fisheries from irreparable harm. *Stritmatter*, 102 Wn.2d at 521-22 (citing *United States v. Michigan*, 653 F.2d 277, 279 (6th Cir. 1981)); *accord Puyallup Tribe, Inc. v. Dep't of Game*, 433 U.S. 165, 175, 97 S. Ct. 2616, 53 L. Ed. 2d 667 (1977). Similarly, in *Stritmatter*, we held that the non-treaty fishing rights of the

Chehalis tribe are subject only to reasonable and necessary conservation regulations and that the burden is on the State to demonstrate the regulation is reasonable and necessary.

¶11 Here, the issue is different and the State is not required to meet this burden. In *Stritmatter*, we were concerned with the types of fishing closures issued by the Department of Game: allocation and conservation. These types of closures regulate the entire tribe's right to fish. We held that the allocation closure impermissibly infringed on the Chehalis tribe's aboriginal, on-reservation right to fish. *Stritmatter*, 102 Wn.2d at 522. But here tribal rights are not implicated in the same way, if at all.

¶12 Cayenne contends the exclusive right to fish discussed in *Stritmatter* is his individual right, which would make his crime-related prohibition subject to the reasonable and necessary standard. Interpreting *Stritmatter*, Cayenne contends our reversal of a tribal member's criminal conviction for violating the allocation closure necessarily implies Cayenne has an individual right to fish. This does not follow. *Stritmatter* concerned a state regulatory allocation closure that banned fishing completely during the closure and operated against the entire tribe. *Stritmatter*, 102 Wn.2d at 522. We reached our conclusion in *Stritmatter* because a state regulation improperly infringed on the collective fishing rights of the Chehalis tribe as a whole, not a particular tribal member. We reversed the tribal member's conviction because a person cannot be guilty of violating an invalid state regulation. The holding in *Stritmatter* is limited to regulations infringing on the federally protected fishing rights of the Chehalis tribe as a whole.

■ ■ ¶13 Here, in contrast, the crime-related prohibition on gillnets is merely a sentencing condition placed on a convicted felon (who happens to be a tribal member) for an

off-reservation crime.[2] Notwithstanding *Stritmatter*, the defendant was personally before the trial court and subject to its full authority, which includes crime-related prohibitions. Limiting the trial court's sentencing authority, as Cayenne requests, would create the unwanted result of permitting tribal lands to be havens for criminals avoiding justice after violating state laws. As such, we hold when sentencing a tribal member for an off-reservation crime, the trial court may impose crime-related prohibitions to the extent they serve the purpose of sentencing and the crime related-prohibitions follow the individual during the prohibition's validity.

## CONCLUSION

¶14 We reverse the Court of Appeals and affirm the trial court's entry of a crime-related prohibition.

ALEXANDER, C.J., and MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.

Reconsideration denied February 2, 2009.

[No. 79356-5. En Banc.]
Argued November 6, 2007. Decided November 20, 2008.

---

[2] In fact, in prohibiting Cayenne from owning a gillnet, the trial court still left open many alternative means by which Cayenne could lawfully take fish during his eight-month sentence.