[No. 29508-7-III.    Division Three.    April 12, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL CLARK, *Appellant*.

*Stephen T. Graham*, for appellant.

*Karl F. Sloan*, *Prosecuting Attorney*, and *Jennifer R. Richardson* and *Stephen M. Bozarth, Deputies*, for respondent.

¶1 KORSMO, C.J. — Michael Clark appeals his conviction for first degree theft, arguing that the state courts lacked authority to issue a search warrant for his residence on the Colville Reservation and did not properly summons prospective jurors from the reservation. The United States Supreme Court has answered the first question against Mr. Clark's position, and he fails to establish that potential jurors have been systematically excluded from the jury selection process. The conviction is affirmed.

## FACTS

¶2 A burglary was committed October 13, 2009, at a Cascade and Columbia Railroad workshop in the city of Omak. The workshop is within the boundaries of the Colville Reservation, but sits on fee land owned by the railroad.

¶3 Detective Jeffery Koplin of the Omak Police Department received a tip that Michael Clark had been involved in the burglary. Mr. Clark is an enrolled member of the Colville Confederated Tribes. The detective went to Mr. Clark's home, which is located in the city of Omak on trust land within the Colville Reservation. Detective Koplin eventually arrested Mr. Clark outside of his house.

¶4 The detective applied for and obtained a search warrant for Mr. Clark's residence from the Honorable Chris Culp of the Okanogan County District Court.[1] The detective did not seek a search warrant from tribal court, nor did he seek assistance from the tribal police before serving the warrant. Items stolen in the burglary were recovered from the residence.

¶5 Charges of second degree burglary, third degree malicious mischief, and first degree theft were filed in the

---

[1] Judge Culp, now a superior court judge for Okanogan County, also served as both a superior court commissioner and a constitutional pro tempore judge for the superior court at the time. *See* AR 6. The record does not demonstrate which court he was serving when the warrant issued. For purposes of this opinion, we are assuming he acted within his capacity as a district court judge, although the analysis would not change if he had been serving in superior court.

Okanogan County Superior Court. Defense counsel moved to suppress the evidence recovered from the residence, arguing that the warrant should have been obtained from the tribal court and served by tribal officers. The trial court heard testimony at the CrR 3.6 hearing and found that the workshop was on fee land belonging to the railroad. Based on that factual determination, the court concluded that state courts had criminal jurisdiction over the burglary scene and thus had authority to issue the warrant for the house on the reservation. The court denied the motion to suppress.

¶6 Defense counsel also moved to dismiss the charges or, alternatively, to reconfigure the jury venire. The defense argued that the summons[2] for jury service sent to tribal members living on trust land was ineffectual and, hence, noncompulsory, thus resulting in a nonrepresentative venire. The court heard argument and ruled that there was no systematic exclusion of jurors. The court entered several now unchallenged findings of fact, including (1) Native Americans make up 11 percent of the Okanogan County population; (2) Native Americans routinely serve on Okanogan juries; (3) there was no mechanism for having tribal courts serve state court jury summonses; (4) there was no statistical information on response or jury service rates of Native Americans in the county; (5) many enrolled members of the Colville Confederated Tribes live off-reservation in the county, and many nonenrolled Native Americans live on the reservation; (6) there was no record of anyone being prosecuted in Okanogan County or in tribal court for failure to respond to a jury summons.

¶7 The case ultimately proceeded to jury trial. After excusing venire members for hardship reasons, the remaining prospective jurors were asked if any of them were enrolled members of the Colville Confederated Tribes. One

---

[2] While the record is unclear, it appears that the clerk's office sends the same summons to all potential jurors living in Okanogan County regardless of whether they live on reservation trust land or not.

juror indicated that she was not an enrolled member, but was the descendant of enrolled members. The record does not reflect whether she served on the jury, nor does it reflect whether any other unenrolled tribal members were present. The jury acquitted Mr. Clark of the burglary and malicious mischief charges, but did convict him of first degree theft. The trial court imposed a standard range sentence. Mr. Clark then timely appealed to this court.

## ANALYSIS

¶8 This appeal reprises the two noted challenges to the search warrant and the jury summons procedure. We conclude that the state courts had authority to issue the search warrant and that Mr. Clark has not proved his challenge to the jury process. Each claim will be discussed in turn.

¶9 *Search Warrant Authority.* Mr. Clark argues that the state courts, although they had jurisdiction over the criminal offense, lacked authority to issue the search warrant for his home on reservation trust land. The authority he cites is not persuasive in light of subsequent United States Supreme Court authority.

¶10 Public Law 280[3] authorized the states to assert jurisdiction over reservations within their boundaries. *McCrea v. Denison*, 76 Wn. App. 395, 398, 885 P.2d 856 (1994). Washington's response to Public Law 280 is found in chapter 37.12 RCW. This State asserted civil and criminal jurisdiction over reservation lands, but it declined jurisdiction over Indians while on tribal or trust land.[4] RCW 37.12.010. Because the workshop was on fee land rather than tribal or trust land, the State courts had jurisdiction over the crimes committed there. *Id.*; *Washington v. Confederated Bands & Tribes of Yakima Indian Nation*, 439 U.S. 463, 475, 99 S. Ct. 740, 58 L. Ed. 2d 740 (1979).

---

[3] 67 Stat. 588 (1953).
[4] There are eight specific areas excluded from this declination, but none of them are relevant here. RCW 37.12.010.

¶11 However, the search warrant here was served at a location where the State did not have criminal jurisdiction—the residence of an Indian located on trust land. Mr. Clark argues that in that circumstance, the State must resort to tribal courts for search warrants. He relies upon two cases, *United States v. Baker*, 894 F.2d 1144 (10th Cir. 1990), and *State v. Mathews*, 133 Idaho 300, 314, 986 P.2d 323 (1999).

¶12 In *Baker*, the Tenth Circuit of the United States Court of Appeals held that a Colorado state court had no jurisdiction to issue a search warrant to seize evidence of suspected methamphetamine manufacturing by a tribal member on property rented by the defendant tribal member within the boundaries of tribal land.

¶13 Mr. Clark also relies on language in *Mathews*, where the court stated, "Thus, the courts addressing the exercise of state arrest jurisdiction within Indian country have found that a determination of whether such an exercise of state authority infringes on tribal sovereignty turns on the existence of a governing tribal procedure." 133 Idaho at 314. In *Mathews*, the crime occurred outside of the reservation. The court determined that tribal sovereignty was not infringed when a state court arrest warrant is executed within Indian country where the state possesses jurisdiction over the underlying crime and where tribal law did not have a procedure in place regulating the execution of state search warrants in cases involving Indians who had committed crimes outside the reservation. *Id.*

¶14 This case is neither *Baker* nor *Mathews*. Unlike Colorado in the *Baker* case, Washington had jurisdiction over the crime it was prosecuting. *Mathews* is a little closer factually, but even if the quoted observation is treated as a rule of law, it has been superseded by *Nevada v. Hicks*, 533 U.S. 353, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (2001).

¶15 In *Hicks*, the court faced the question of whether a tribe could assert jurisdiction over state officers serving a state warrant on reservation trust land. The court an-

swered the question in the negative, noting that states typically have jurisdiction over reservation lands unless a competing policy interest prohibited it.[5] 533 U.S. at 361-65. The court specifically ruled that state officers could enter the reservation and serve a search warrant for a crime committed within the state's jurisdiction. *Id.* at 363-64.

¶16 *Hicks* is dispositive of Mr. Clark's argument that state officials lacked authority to serve the search warrant on reservation trust land for an offense committed within the state's jurisdiction. The trial court correctly denied the motion to suppress.

¶17 *Jury Venire.* Mr. Clark also contends that the process for creating the venire is defective because the jury summons was ineffectual as to enrolled tribal members living on reservation trust lands. We question his premise, but need not reach the question because he has failed to establish any error.

¶18 The Sixth and Fourteenth Amendments prohibit the systematic exclusion of distinctive groups from jury pools. *State v. Lanciloti*, 165 Wn.2d 661, 671, 201 P.3d 323 (2009). RCW 2.36.080(1) requires that "all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court." However, there is no right to be tried by a particular jury or a particular juror. *State v. Gentry*, 125 Wn.2d 570, 615, 888 P.2d 1105 (1995).

¶19 Washington juries are drawn from a master list that is comprised of all registered voters and holders of driver's licenses residing in the county. RCW 2.36.054. The burden of proof is on the challenger to show that the master list is not representative because it excludes an identifiable population group. *State v. Hilliard*, 89 Wn.2d 430, 440, 573 P.2d 22 (1977). The use of voter registration lists to generate

---

[5] The Washington Supreme Court subsequently applied this aspect of *Hicks* to a criminal sentencing condition in *State v. Cayenne*, 165 Wn.2d 10, 14-15, 195 P.3d 521 (2008).

the master list has been consistently upheld as the best source for compiling a fair cross-section of the community. *Id.* at 440-41. However, even if the source list is not unconstitutionally discriminatory, a selection procedure is still invalid if it systematically excludes a cognizable class of individuals. *Id.* at 441.

██ ██ ¶20 Where the selection process is in substantial compliance with the statutes, the defendant must show prejudice from the selection process; however, prejudice will be presumed if there is a material departure from the statutes. *State v. Tingdale*, 117 Wn.2d 595, 600, 817 P.2d 850 (1991). This court reviews a trial court's ruling regarding challenges to the venire process for abuse of discretion. *Id.* Discretion is abused where it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

¶21 Mr. Clark relies upon the decision in *North Sea Products, Ltd. v. Clipper Seafoods Co.*, 92 Wn.2d 236, 595 P.2d 938 (1979), in support of his contention that the jury summonses are ineffectual against tribal members living on trust land. There the court ruled that superior court could not issue writs of garnishment to tribal businesses and political entities to compel them to withhold from employee paychecks. The tribe was immune from state court attachment. *Id.* at 240-41.

¶22 *North Sea* is not persuasive in this context. First, we note that tribes enjoy an immunity that individual members of the tribe do not have. *Puyallup Tribe, Inc. v. Dep't of Game*, 433 U.S. 165, 171-72, 97 S. Ct. 2616, 53 L. Ed. 2d 667 (1977). Thus, an action against a tribal member cannot be equated to an action against the tribe itself. Second, we question how closely related a jury summons and a writ of garnishment are for the purpose of this analogy. In light of *Hicks*, which extensively discussed the question of service of state process on reservation lands, it is doubtful that *Puyallup Tribe* is applicable here. *See Hicks*, 533 U.S. at 363-64. Nonetheless, we need not decide these questions.

¶23 It was Mr. Clark's burden to establish that there was a material departure from the jury selection statutes. Here, it appears that the county used the same process for summoning reservation residents as it used for all other county residents. There was no material departure. In light of that, it became Mr. Clark's burden to establish that there was a systematic exclusion of a distinctive group[6] from the venire. *Hilliard*, 89 Wn.2d at 440. He has not done so.

¶24 The record does not reflect that enrolled tribal members systematically failed to appear for jury service in Okanogan County. There was no showing of their participation rates in relation to their proportion of the eligible juror population. All that was established was that there were no enrolled tribal members in the venire of Mr. Clark's case, even though there was at least one Native American member of the venire. A systematic failure, in the absence of evidence that normal selection procedures were not followed, would require evidence that a cognizable group routinely was excluded from jury service. There is no such evidence in this record.

¶25 Far from showing systematic exclusion, the record reflects that enrolled tribal members residing on trust lands were routinely called to jury service, and in the experience of the veteran trial judge, they regularly served on juries. The Okanogan practices were inclusive, not exclusive.[7]

¶26 Mr. Clark has not established that any error occurred in the selection of the venire called to his case, nor

---

[6] It is questionable that enrolled tribal members living on trust lands constitutes a distinctive group for this purpose. *See United States v. Smith*, 463 F. Supp. 680, 682 (E.D. Wis. 1979).

[7] Mr. Clark's suggested practice of asking federal or tribal courts to summons reservation residents also fails his own test for compulsory service. As both *Hicks* and *North Sea* demonstrate, state courts have no authority to compel tribal or federal courts to do their bidding. Asking those courts to voluntarily undertake the task would be no more compulsory than the current system.

has he established that the county's process systematically excluded any distinctive groups.

¶27 Affirmed.

S<small>WEENEY</small> and B<small>ROWN</small>, JJ., concur.

Review granted at 175 Wn.2d 1005 (2012).